**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Malik Al-Mustafa El-Alamin, also known
as Eric Britten,

Civ. No. 07-4879 (ADM/JJK)

Plaintiff,

v.

**REPORT AND
RECOMMENDATION**

Kurt Radke, Jeffrey Miller, Elizabeth
Dea, Erick Fleck, and Minneapolis
Police Department,

Defendants.

Malik Al-Mustafa El-Alamin, 12826-041, U.S. Penitentiary P. O. Box 33, Terre
Haute, IN 47808, *pro se*.

Sara J. Lathrop, Assistant City Attorney, 333 South Seventh Street, Suite 300,
Minneapolis, MN  55402-2453, counsel for Defendants Kurt Radke, Jeffrey Miller
Elizabeth Dea, and Minneapolis Police Department.

Julie K. Bowman, Assistant Hennepin County Attorney, A2000, 300 South Sixth
Street, Suite A-2000, Minneapolis, MN  55487, counsel for Defendant Erick
Fleck.

## I.    INTRODUCTION

This matter is before this Court for a report and recommendation to the

District Court on Defendants' Motion for Summary Judgment.  *See* 28 U.S.C.

§ 636(b)(1) and Local Rule 72.1.  For the reasons stated below, this Court

recommends that Defendants' Motion for Summary Judgment (Doc. No. 48) be

granted and this action be dismissed.  In so ruling, this Court also recommends

that Defendants' Motion to Compel Discovery (Doc. No. 35), Plaintiff's Motion to Stay Pending Criminal Appeal (Doc. No. 63), and Plaintiff's Motion for a Fourth Continuance (Doc. No 69), be denied as moot.

## II.   SEARCH, SEIZURE, ARREST, AND CONVICTION

On April 25, 2007, a jury found Plaintiff guilty of Possession with Intent to Distribute Cocaine Base and Felon in Possession of a Firearm.  (Doc. No. 43, Aff. of Julie K. Bowman ("Bowman Aff.") ¶ 5, Ex. D.)  He was sentenced to 262 months imprisonment on the drug charge and 120 months imprisonment on the weapons charge, all terms to run concurrently.  (Doc. No. 50, Aff. of Sara J. Lathrop ("Lathrop Aff.") ¶ 9, Ex. 8 at 2.)  Plaintiff is currently incarcerated in the United States Penitentiary in Terre Haute, Indiana.  (Doc. No. 49 at 8.)  He appealed his conviction to the United States Court of Appeals for the Eighth Circuit.  (*See United States v. Malik Al Mustafa El-Alamin,* No. 06-cr-173 (MJD/SRN-1) (D. Minn. filed June 13, 2006), at Doc. No. 164.)  The appeal is pending.

The following are the events surrounding the search, seizure, and arrest that form the basis of Plaintiff's § 1983 action for compensatory and punitive damages now before this Court.  Plaintiff filed a "Memorandum of Law in Opposition to [D]efendants['] Motion for Summary Judgment" (Doc. No. 72)[1] in

---

[1]   Plaintiff's memorandum opposing summary judgment was filed beyond the time period permitted by this Court's October 21, 2008 Order granting Plaintiff an extension of the filing deadline for the fourth time.  (*See* Doc. No. 65.)  Although
(Footnote Continued on Following Page)

which he makes further assertions of fact.  However, in that submission he has

not presented any material factual assertions that differ from the version of facts

presented by Defendants.

At the time of the underlying events in April 2006, Minneapolis Police

Officer Kurt Radke was assigned to the Narcotics Unit of the Minneapolis Police

Department as a narcotics investigator.  (Lathrop Aff. ¶ 2, Ex. 1 at 2.)  On April

17, 2006, Radke applied for a search warrant for a residence on 30th Avenue

North in Minneapolis and for Plaintiff's person.  (*Id.*).  Radke's search warrant

affidavit stated that within the previous month he received information from a

Confidential Reliable Informant ("CRI") about a drug operation in the Twin Cities.

(*Id.*)  The CRI had informed Radke that a man known as Malik El-Alamin was

actively selling cocaine in the Minneapolis area.  Investigators found that this

person's full name was Malik Al-Mustafa El-Alamin (Plaintiff), and that he lived at

the 30th-Avenue-North residence.  The CRI positively identified Plaintiff as the

person he knew as Malik El-Alamin from a photograph shown to him by the

investigators, and he also provided a phone number that Plaintiff used in his drug

business.  The CRI indicated that he had purchased cocaine inside the 30th-

Avenue-North residence in the past.  (*Id.*)

After confirming the details that the CRI provided about Plaintiff, Radke

---

(Footnote Continued from Previous Page)
Plaintiff failed to timely file his memorandum in opposition to summary judgment,
this Court will consider the arguments raised therein.

arranged for the CRI to purchase cocaine from Plaintiff in a "controlled buy."  The CRI was provided with pre-recorded currency and purchased cocaine from Plaintiff.  The Minneapolis Police Department surveilled the purchase and followed Plaintiff back to his residence.  Meanwhile, the CRI gave the cocaine purchased in the controlled buy to the police, and the police field tested it positive for cocaine base.  Prior to and following his meeting with Plaintiff, the CRI was searched for contraband and none was found.  (*Id.*)

Radke learned that Plaintiff had an extensive criminal history, before this drug buy, including narcotics and weapons arrests.  He had multiple arrests in Minneapolis including weapons charges and obstructing police.  (*Id.*)

Within 72 hours of the controlled buy, Radke applied for a search warrant (*Id.*), and on April 17, 2006, the Honorable Patricia Belois, Judge of Hennepin County District Court, issued a no-knock search warrant, permitting the police to search Plaintiff and his residence for drugs and evidence of drug crimes. (Lathrop Aff. ¶ 3, Ex. 2.)

On that same day, April 17, 2006, Radke, together with the other individual Defendants, arranged to execute the warrant at Plaintiff's residence.  (Lathrop Aff. ¶¶ 4-6, Exs. 3-5.)  Because of El-Alamin's violent criminal history, a SWAT team unit was enlisted to conduct the entry into Plaintiff's home.  As the narcotics officers set up a stationery surveillance of the residence, Plaintiff arrived home driving a brown and white BMW.  (*Id.* at ¶ 4, Ex. 3.)  The surveillance officers saw Plaintiff enter and then exit his house and walk into the back yard with a pit bull.

(*Id.* at ¶ 6, Ex. 5.)  As he proceeded toward his vehicle, Plaintiff saw the narcotics officers moving in and began to run away.  (*Id.* at ¶ 5, Ex. 4.)  Radke intercepted Plaintiff who stopped running and was taken down and handcuffed.  (*Id.*)  Defendant Jeffrey Miller assisted in handcuffing Plaintiff and then searched his person, pulling a baggie of suspected crack cocaine from Plaintiff's right front pants pocket.  (*Id.* at ¶ 5, Ex. 4.)

Defendant Erick Fleck, a deputy Hennepin County Sheriff, also assisted in searching Plaintiff and removed a semi-automatic handgun from the front of Plaintiff's pants.  (*Id.*)  Defendant Miller then removed a wad of cash currency from Plaintiff's left front pants pocket and a wallet from the rear of his trousers.  (*Id.*)  He found a cell phone underneath Plaintiff's body when he was rolled over, and gave these items to Defendant Fleck, who later gave them to Defendant Elizabeth Dea, another Minneapolis Police Department Officer.  (*Id.*)

After the SWAT team members secured the residence, the narcotics officers then entered the premises to conduct the search.  The police inventoried the property they seized from the residence and Plaintiff's person, including suspected crack cocaine, suspected marijuana, a 9mm semi-automatic handgun, ammunition, an operator manual for a handgun "night sight", a "wiz-inator", U.S. currency and a surveillance camera.  (Lathrop Aff. ¶¶ 5-8, Ex. 5-7.)  The police boarded up the residence, and animal control took the pit bull into custody.

After Plaintiff was subdued and the gun and suspected drugs were taken from him, Defendant Fleck searched Plaintiff's BMW, believing other evidence of

drug activity would be found, but did not find anything in or seize anything from the vehicle.  (Doc. No. 44, Aff. of Erik Fleck ("Fleck Aff.") ¶ 13.)

The United States Attorney's Office sought a grand jury indictment of Plaintiff for federal crimes relating to the drugs and the gun the police found on his person.  In May 2006, the grand jury of this district indicted Plaintiff for these crimes and this led to his conviction and sentencing in this Court.  (*See U.S. v. El-Alamin*, No. 06-cr-173 (MJD-SRN-1), at Doc. 11.)

### III.   SUPPRESSION MOTIONS IN UNDERLYING CASE

During the course of the prosecution of the underlying case, Plaintiff moved to suppress the evidence obtained as a result of the search of his person and home on April 17, 2006—the search which is the subject of this Complaint. (*See* Bowman Aff. ¶2, Ex. A; Lathrop Aff. ¶ 10, Ex. 9.)  In that motion, Plaintiff argued that there was insufficient probable cause for the state warrant to be issued to search his person and residence for evidence of drug crimes. Magistrate Judge Nelson recommended that Plaintiff's motions to suppress be denied, concluding that the search warrant application contained "ample probable cause for the issuance of the warrant," noting that the evidence contained in the affidavit provided sufficient reason to believe that there was a fair probability that contraband or evidence of a crime would be found at Plaintiff's residence or on his person.  (Bowman Aff. ¶ 2, Ex. A at 6-7.)

On September 29, 2006, Judge Michael Davis adopted the recommendation of Magistrate Judge Nelson and denied Plaintiff's motion to

suppress.  (Bowman Aff. ¶ 3, Ex. B.)  On March 29, 2007, upon a motion for reconsideration, Judge Davis issued another order relating to the validity of the search warrant and Officer Radke's affidavit submitted in applying for the search warrant.  (Lathrop Aff. ¶ 10, Ex. 9.)  Plaintiff argued that statements in Radke's search warrant affidavit were false.  Judge Davis noted that Plaintiff had not identified, in this motion, which statements contained in the search warrant affidavit were false.  However, on a previous motion, which had been denied by the Court as untimely, three statements had been identified as false: (1) that the CRI had purchased cocaine from within Plaintiff's residence in the past; (2) that Plaintiff has multiple arrests including obstructing police; and (3) that Plaintiff is a confirmed member of the Gangster Disciples, a street gang.  In denying the motion, Judge Davis stated that Plaintiff had provided the Court with no evidence to suggest that the CRI had not purchased cocaine from within Plaintiff's residence in the past and that it was not necessary that the CRI purchase cocaine from the Plaintiff, only that cocaine was purchased from within the residence in the past.  Moreover, Judge Davis said that this argument was mooted given the fact that the CRI, within 72 hours of the search warrant application, purchased cocaine from Plaintiff during a controlled buy.  Judge Davis found that the information that had been provided about Plaintiff being a member of the Gangster Disciples gang was provided as background information only, that probable cause remained even if the information about gang membership were excluded from the search warrant affidavit, and that Plaintiff

had failed to demonstrate that the statements made about his prior arrest record

were false.  (*Id.*)

## IV.    SUMMARY OF CLAIMS[2]

Plaintiff commenced this lawsuit *pro se* against the Minneapolis Police

Department, Officer Kurt Radke, Sergeant Jeffrey Miller, Sergeant Elizabeth Dea

and Hennepin County Sheriff Deputy Erick Fleck.  Defendants timely removed

the lawsuit to this Court on December 17, 2007.  Plaintiff captioned his lawsuit as

a civil rights claim pled under 42 U.S.C. § 1983.  (Doc. No. 1.)  The primary thrust

of Plaintiff's Complaint is against Defendant Kurt Radke.  Plaintiff contends that

Radke violated Plaintiff's constitutional rights secured by the Fourth and

Fourteenth Amendments of the United States Constitution by using false

statements to obtain a state search warrant.  *(Id.)*  Plaintiff contends that Radke

---

[2]      In his memorandum opposing summary judgment, Plaintiff asserts that
Radke "tampered with evidence by adding some type of substance to the
cocaine base that Plaintiff was arrested with."  (Doc. No. 72 at 10-11.)  Plaintiff's
assertions relate to Radke's recollection that field testing of the cocaine base
seized from Plaintiff's person weighed 20 grams, while lab results from the
Minneapolis Police Department Drug Analysis for Law Enforcement office
indicated that the cocaine base weighed 22.91 grams.  (*See* Doc. No. 73, Ex.
Index, Ex. 5.)  Plaintiff does not specify how this assertion relates to any claim
alleged in his Complaint.  Plaintiff's Complaint, even liberally construed, in no
way embraces a claim of a violation of the Constitution or Laws of the United
States relating to tampering with evidence.  Because it is not appropriate for
Plaintiff to advance a new theory of his case in defending a summary judgment
motion, this Court need not address Plaintiff's evidence-tampering assertion.
*See Sorensen v. First Wis. Nat'l Bank of Milwaukee, N.A.*, 931 F.2d 19, 21 (8th
Cir. 1991); *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)
("Although we must liberally construe plaintiff's factual allegations, . . . we will not
supply additional facts, nor will we construct a legal theory for plaintiff that
assumes facts that have not been pleaded.").

made a false statement in his affidavit in support of the state search warrant when Radke insinuated that he had his alleged confidential reliable informant purchase narcotics from Plaintiff's residence when Radke "knew that it never happened." (*Id.*)  Plaintiff also contends that Radke stated in the Affidavit that "the CRI was searched pre- and post-buy with a negative result for contraband" but, according to Plaintiff, Radke subsequently asserted that Plaintiff sold narcotics to his alleged informant.  (*Id.*)  Plaintiff also contends that Radke intentionally misled the state court judge by lying about Radke's past productive relationship with the CRI in an attempt "to enhance the credibility of his alleged informant to be more than a mere tipster."  (*Id.*)

Plaintiff also complains about the fact that the case ended up in federal jurisdiction.  He contends that Radke violated Plaintiff's right to equal protection under the Fourteenth Amendment of the United States Constitution by "intentionally transferring Plaintiff's case to Federal Jurisdiction for the sole purpose to deny Plaintiff the Constitutional right to bail that's secured in the Constitution for the State of Minnesota." (*Id.*)  In addition, Plaintiff contends that Radke "intentionally brought the case to the United States Attorneys Office via Peter Noble of the Alcohol, Tobacco, Firearms and Explosives.  Due to the fact that Minnesota doesn't have any gun manufacturers every person who has a felony case for being in possession of a firearm as a felon must be transferred to Federal Jurisdiction, not only on the basis of race."  Plaintiff contends that all of Radke's actions were "racially motivated."  (*Id.*)  The Complaint contends that

Radke violated the following statutes "in his individual capacity":  48 U.S.C.

§ 1981, 42 U.S.C.  1985, 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 2235,

Minn. Stat. § 626.22 and Minn. Stat. § 609.48.  (*Id.*)

Plaintiff then alleges that the Minneapolis Police Department violated his

civil rights by failing to train officers in proper procedures for obtaining and

executing search warrants.  Finally, he alleges that all of the individual

Defendants (Radke, Miller, Dea, and Fleck) violated his civil rights by damaging

or destroying various items of personal property during the search or after the

property was confiscated, and that these acts were racially motivated.  (*Id.*)

## V.    SUMMARY JUDGMENT STANDARD

The moving party is entitled to judgment as a matter of law where the

undisputed material facts support summary judgment and there are not genuine

issues of material fact.  *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247 (1986); *Thao v. City of St. Paul*, 481 F.3d 565, 567 (8th Cir.

1986).  A court must construe the facts and all reasonable inferences in the light

most favorable to the non-moving party.  *See Ralph's Distrib. Co. v. AMF, Inc.*,

667 F.2d 670, 672 (8th Cir. 1981).

The moving party bears the burden of showing that no genuine issue of

material fact exists.  *Anderson*, 477 U.S. at 256; *Unigroup, Inc. v. O'Rourke*

*Storage & Transfer Co.*, 980 F.2d 1217, 1219-20 (8th Cir. 1992).  Summary

judgment should be granted if the only facts in dispute are facts that are not

determinative of the essential elements of the cause of action.  But even when

evidence may be relevant to a material fact "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Counsell v. Nystrom & Assoc., Ltd.*, No. 05-1215 (PJS/JJG), 2007 WL 628191, at *5 (D. Minn. Jan. 13, 2007) (quoting *Anderson*, 477 U.S. at 252) (emphasis added).  A failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and Fed.R.Civ.P. 56 requires entry of summary judgment in favor of the moving party.  *See Celotex Corp. v. Cattret*, 477 U.S. 317, 322-23 (1986).  A non-moving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  *Tindle v. Caudell*, 56 F.3d 966, 969 (8th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Defendant Erick Fleck submitted his summary judgment papers on June 16, 2008.  (Doc. Nos. 41-45.)  Defendants Minneapolis Police Department, Kurt Radke, Jeffrey Miller, and Elizabeth Dea submitted their summary judgment papers on July 1, 2008.  (Doc. Nos. 48-51.)  Plaintiff's response to Defendants' summary judgment was due July 21, 2008.  (Doc. No. 5.)  Plaintiff did not file his response by the deadline.

On August 6, 2008, Plaintiff first moved for an extension.  (Doc. No. 51.) The Court granted this motion, giving Plaintiff until September 2, 2008, to file a summary judgment response.  (Doc. No. 56.)  On August 13, 2008, Plaintiff moved for a second extension.  (Doc. No. 57.)  The Court granted this motion,

giving Plaintiff until September 8, 2008, to file a summary judgment response, but Plaintiff did not meet this deadline.  (Doc. No. 57.)  On September 15, 2008, Plaintiff moved for a third time for an extension.  (Doc. No. 59.)  Once again, the Court granted the motion, giving Plaintiff until October 1, 2008, to file his summary judgment response, but Plaintiff did not meet this deadline.  (Doc. No. 60.)  On October 17, 2008, Plaintiff moved for a fourth time for an extension and Plaintiff was granted his final extension, on October 21, 2008, to file a summary judgment response.  (Doc. No. 61, 65.)  No timely response was ever received, but Plaintiff did file—after the final deadline established by this Court— a memorandum and supporting papers on November 21, 2008 in opposition to Defendants' motions for summary judgment.  (*See* Doc. Nos. 72-74.).  Defendants filed replies to Plaintiff's opposition papers on December 1, 2008.  (Doc. Nos. 78-79.)

## VI.    THE INDIVIDUAL DEFENDANTS RADKE, MILLER, DEA, AND FLECK ARE SHIELDED BY QUALIFIED IMMUNITY.

The individual Defendants Radke, Miller, Dea, and Fleck are immune from this suit under the doctrine of qualified immunity.  Qualified immunity protects a public officer from liability from a suit such as this one if, in light of clearly established law and the information possessed by the officer at the time, a reasonable officer could have believed his conduct was lawful.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Whether qualified immunity applies is a question for the Court.  *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989).  The

Supreme Court has held that qualified immunity is not just immunity from liability, but also "immunity from suit," that is, from the burdens of having to defend the litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *accord Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Qualified immunity shields law enforcement officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to allow public officials to perform their duties in a manner they believe to be correct without fear for their own financial well-being. *Id.* at 814. In determining the validity of a qualified immunity defense, the issue is not whether the defendant acted wrongly, but whether a reasonable officer would have known that the Defendant's conduct violated a clearly established right. *Malley v. Briggs*, 475 U.S. 335, 344-345 (1986); *Hill v. Scott*, 349 F.3d 1068, 1071 (8th Cir. 2003). In analyzing the issue of qualified immunity, the court first determines whether the facts alleged show a constitutional violation and, if so, whether the law regarding the right allegedly violated was clearly established. *Saucier*, 533 U.S. at 201 (2001). Immunity evaporates only if "it is obvious that no reasonably competent officer would have concluded" that the conduct was legal. *See Malley*, 475 U.S. at 341. A factual dispute over what reasonable officers would have thought of the officers' conduct does not preclude summary judgment. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Indeed, such a factual dispute requires summary

judgment for the officers.  *See Malley*, 475 U.S. at 341 (noting that "if officers of reasonable competence could disagree . . . , immunity should be recognized").

Applying these principles of qualified immunity to this case, we turn first to the claim that Defendant Radke violated Plaintiff's right to be free from unreasonable search and seizure.[3]  Plaintiff has failed to come forward with any evidence to raise an issue of material fact about whether a reasonable officer in Radke's position would have known that Radke's conduct violated a clearly established right.  *See Engleman v. Deputy Murray*, __ F.3d __, 2008 WL 4899278, at *2 (8th Cir. Nov. 17, 2008).  Although Plaintiff contends that Radke lied in the affidavit submitted in support of the search warrant application, Plaintiff comes forward with nothing to support this assertion.  Plaintiff objects to the fact that Radke's affidavit included, as part of the background support for the search warrant, the statement that the CRI said that he had purchased cocaine in the past from within the residence where Plaintiff lived.  However, Plaintiff presents no evidence that the CRI did not, in fact, tell Radke that such purchases had been made in the past.  The controlled buy from Plaintiff, which occurred before the search warrant was obtained, independently confirmed the reliability of the

_____

[3]      Officer Radke is the only Defendant who is specifically mentioned in the Complaint in connection with Plaintiff's claims that his constitutional rights were violated because an illegal search was conducted and a federal prosecution was pursued.  Thus, the focus of this analysis is upon Radke's qualified immunity.  To the extent that the Complaint generally implies that the other individual Defendants are liable for the same charges, they also are immune from suit on the same grounds as Radke.

CRI's statements.

Plaintiff's reliance on portions of the trial transcript showing the cross-examination of Officer Radke provides no support for his argument that Radke lied in order to obtain a warrant.  (*See* Doc. No. 73, Ex. Index, Ex. 10.)  In his criminal trial, Plaintiff's counsel cross-examined Officer Radke resulting in the following exchange:

> Q.  Was everything in the search warrant affidavit accurate?
>
> A.  Yes it was.
>
> Q.  So you're telling us here today that everything you told Judge Belois was true?
>
> A.  Yes.
>
> Q.  Well, you told Judge Belois that there had been a prior sale of controlled substances in the residence of Mailik El-Alamin, correct?
>
> . . . .
>
> A.  That's not what I told her.
> . . . .
>
> Q.  You told the judge that there had been past purchases of cocaine from within the residence, right?
>
> A.  I told the judge the CRI informed me that cocaine had been purchased from that residence.

(*Id.* at 140-41.)  Citing this portion of the record, Plaintiff argues that "[t]he search warrant affidavit contained statements that Defendant Radke knew [were] false and he made them with a clear intention to mislead the [issuing judge] to believe that a drug sale happened from [Plaintiff's] home in the past."  (*See* Doc. No. 72

at 4.)  Plaintiff apparently concludes that the import of this exchange on cross-examination calls into question the veracity of Radke's assertions to the judge issuing the warrant.  Other than Plaintiff's self-serving assertion that Radke was not being truthful when he told the issuing judge that the CRI informed him that cocaine had been purchased from Plaintiff's residence, Plaintiff offers nothing to support his argument.

Plaintiff also suggests that Radke lied in the affidavit because the affidavit said that "the CRI was searched pre- and post-buy with a negative result for contraband."  (Lathrop Aff. ¶ 2, Ex. 1.)  Although it is not clear, Plaintiff may be asserting that this statement shows that Plaintiff did not in fact sell cocaine to the CRI in the controlled buy.  However, the affidavit goes on to clearly state that the CRI purchased cocaine in exchange for the prerecorded buy funds—in a transaction that was being surveilled by the police—and the cocaine was field-tested positive for cocaine base.  Radke's statement obviously meant that the CRI had no contraband other than the drugs he purchased from Plaintiff.

Plaintiff also contends that Radke intentionally misled the issuing judge by including a false statement in the affidavit describing the informant as a "Confidential Reliable Informant" because Radke omitted any information about any past productive relationship he had with the informant.  However, Radke never said in the affidavit that the reliability was based upon earlier dealings he had with the informant.  As noted above, the reliability of the informant was corroborated, before the affidavit was prepared, by the fact that the controlled

buy was accomplished.

Here, a neutral magistrate issued a search warrant, finding that there was probable cause to search and seize evidence from Plaintiff's residence and person.  Moreover, Plaintiff had a full opportunity, which he exercised, to test the legality of the search and seizure in three prior reviews by judges in this Court. On August 22, 2006, Magistrate Judge Nelson recommended that Plaintiff's motion to suppress be denied, concluding that the search warrant application contained "ample probable cause for the issuance of the warrant."  (*See* Bowan Aff. ¶ 2, Ex. A.)  On September 29, 2006, Judge Michael Davis adopted the recommendation of Magistrate Judge Nelson and denied Plaintiff's motion to suppress.  (*See id.* at ¶ 3, Ex. B.).  Then, on March 29, 2007, Judge Davis issued another order relating to the validity of the search warrant and Officer Radke's affidavit submitted in applying for the search warrant.  (*See* Lathrop Aff. ¶ 10, Ex. 9.)  Judge Davis conducted a *de novo* review of the validity of the search warrant and concluded that the search warrant was supported by sufficient probable cause.  (*See id.*)

Plaintiff also contends that Radke violated Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution "by denying the Plaintiff equal protection of the laws of Minnesota by intentionally transferring Plaintiff's case to Federal Jurisdiction for the sole purpose to deny Plaintiff the constitutional right to bail that's secured in the Constitution for the State of Minnesota."  (Doc. No. 1.)  In a corollary to this equal protection claim, Plaintiff

contends that Radke "intentionally brought the case to the United States Attorney's office . . . on the basis of race." (*Id.*)  This latter claim, however, is quite unclear because Plaintiff expresses it in the following way: "Due to the fact that Minnesota doesn't have any gun manufacturers every person who has a felony case for being in possession of a firearm as a felon must be transferred to Federal Jurisdiction, not only on the basis of race."  (*Id.*)

Each of these equal protection claims fails as to the claim about federal prosecution.  Radke is immune from suit because Plaintiff cannot establish a genuine issue of material fact regarding whether a reasonable officer in Radke's position would have known that bringing this case to the federal authorities for prosecution violated a clearly established right.  Although the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, may set forth different standards or conditions for pretrial release than those which apply in Minnesota state court, this does not in any way change this outcome.  Plaintiff has no clearly established right to avoid federal prosecution for crimes investigated by state authorities simply because of such differences.

As for Plaintiff's claim that Radke—or any of the other individual defendants—sought prosecution of this case under federal law "on account of" Plaintiff's race, Plaintiff has not come forward with any facts to show that race discrimination was a factor in any of the actions of the Defendants described in the Complaint.  He presented no evidence that he was treated differently than others of different races.  Radke and the other defendants are entitled to

immunity, as a matter of law, from such unsupported charges that their official actions were motivated by a racially discriminatory purpose.  When Plaintiff's Complaint lacks such support, summary judgment should be granted on Defendants' qualified immunity motion so that "immunity from suit," that is, from the burdens of having to defend the litigation, can be accomplished.  *Mitchell*, 472 U.S. at 526 (1985).

In addition to his constitutional claims, Plaintiff cites several federal and state statutes, which he contends Radke violated by obtaining the search warrant through false representations and by pursuing the federal prosecution: "Defendant Kurt Radke has violated the following in his individual capacity:  42 U.S.C. § 1982, 42 U.S.C. § 1985, 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 2235, Minn. Stat. § 626.22 and Minn. Stat. § 609.48."  (Doc. No. 1.)  Although it is not clear, we presume that Plaintiff means that Radke's conduct in obtaining a search warrant through false representations and bringing the criminal case to the federal authorities for federal prosecution violated these various statutes and that damages can be sought for these statutory violations because §1983 covers "deprivation of any rights, privileges, or immunities covered by the Constitution *and laws* . . .."  42 U.S.C. § 1983.  But all of the same defects in Plaintiff's case that defeated Plaintiff's claims of constitutional violations sink these claims as well:  Plaintiff has come forward with no evidence that a search warrant was illegally obtained, no facts or support in law for the proposition that it was unlawful for Radke to refer the case to federal prosecution, and no support for his

claim of racial discrimination.  Mere recitation of a list of statutes which aim at remedying civil rights violation does not, under these circumstances, disable the Defendants' qualified immunity from suit.

## VII.   SUMMARY JUDMENT SHOULD BE GRANTED DISMISSING PLAINTIFF'S CLAIM FOR DAMAGE TO OR LOSS OF PROPERTY

Plaintiff also claims that the individual Defendants violated his civil rights because Defendants damaged real and personal property within his residence, caused his vehicles to be searched and towed to an impound lot, damaged one of his vehicles, had his pit bull sent to the Minneapolis animal shelter, ran up cell phone bills on his cell phone after it was seized, and that various items of Plaintiff's personal property were forfeited.  (Doc. No. 1.)

Plaintiff's claims for damage to or loss of property must be dismissed because he had an adequate post-deprivation remedy available to him for any loss he claims to have suffered.  Minnesota Statutes § 466.02 states that "every municipality is subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."  Plaintiff had a right to obtain relief from Defendants by seeking damages under § 466.02 for the alleged wrongful confiscation of his property, but instead brought these claims of civil rights violations for the alleged wrongful taking of property.

This Court has rejected this exact type of claim from Plaintiff in three previous cases.  *See Britten v. Benson*, Civ. Nos. 02-1002, 02-1059, 02-1192

(ADM/JGL), 2002 U.S. Dist. LEXIS 12956 (D. Minn. July 12, 2002).[4]   This Court,

in its July 12, 2002 Order in the three *Britten* cases wrote:

> The Supreme Court has held that an unauthorized intentional or
> negligent deprivation of property by a state employee does not
> constitute a violation of due process if a meaningful post-deprivation
> remedy for the loss is available. . . .  In *Hubenthal v. Winona County*,
> 751 F.2d 243 91984), the Eighth Circuit dismissed a § 1983 claim
> finding that Minn. Stat. § 466.02 provided plaintiff with an adequate
> post-deprivation remedy for his alleged loss of property rights.
> Section 466.02 provides that "every municipality is subject to liability
> for its torts and those of its officers, employees, and agents acting
> within the scope of their employment or duties whether arising out of
> a governmental or proprietary function."  Minn. Stat. § 466.02 (2000).
> Plaintiff has the same adequate post-deprivation remedy under
> Minnesota law as did Hubenthal.  Because Plaintiff had a right to
> obtain relief under § 466.02 for the alleged confiscation of his
> property, Plaintiff cannot now claim a violation of due process in his
> federal civil rights action against Defendants.

*Id.* at *6-7 (citations omitted).  This Court also noted that Plaintiff's frequent filings

fly perilously near the border of frivolousness and vexatiousness; over the three

years prior to 2002, Plaintiff had brought eight civil actions in this Court.  *Id.* at *9.

The Court warned Plaintiff that he is not immune from sanctions under Rule 11

simply because he appears as a *pro se* litigant, and said that if Plaintiff persists in

the direction of frivolous and vexatious litigations, sanctions will be warranted.  *Id.*

We note that Plaintiff has brought, again, a suit based upon the alleged loss or

destruction of his personal property by state officials without exercising the post-

deprivation remedy available to him under Minnesota state law, despite the fact

---

[4]      As the caption in this case shows, Malik Al-Mustafa El-Alamin is also known as
Eric Britten.

that this Court was very clear about how no such relief was available in Federal

Court.  *Id.* at *6-7.  We are not going to recommend, at this time, that Rule 11

sanctions be imposed on Plaintiff, because the instant lawsuit arises out of

conduct which occurred after the 2002 decision quoted above.  Although it skirts

close to the edge, it is at least not a repetitive action where the same claims are

brought upon matters which the Court has already ruled upon.  However, Plaintiff

should understand that this Court is well aware of this history and, without in any

way foreclosing Plaintiff's right to raise appropriate objections, or exercise

appellate rights, in this case, the Court will not tolerate frivolous and vexatious

litigation by, for example, filing repetitive actions.

### VIII.   SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFF'S CLAIMS AGAINST THE MINNEAPOLIS POLICE DEPARTMENT.

The Plaintiff demands $10 million in damages against the Minneapolis

Police Department "for failure to train officers in the proper procedures to obtain

and execute search warrants."  (Doc. No. 1.)  A municipality is liable for § 1983

claims only when enforcement of a municipal policy or practice results in the

deprivation of federally protected rights.  *Monell v. Dep't of Soc'l Serv.*, 436 U.S.

658, 694 (1978).  Here, Plaintiff has come forward with no proof that there was

any deprivation of a federally protected right through any unconstitutional or

unlawful conduct.  Thus, Plaintiff has not raised any fact issue regarding whether

a municipal policy or custom—such as an inadequate training program—was the

"moving force" behind a constitutional violation.  *Mettler v. Whitledge*, 165 F.3d

1197, 1204 (8th Cir. 1999) (quoting *Monell*, 436 U.S. at 694).

Moreover, municipal liability under 42 U.S.C. § 1983 arises if injury results from "action pursuant to official municipal policy of some nature," *McGautha v. Jackson County, Mo. Collections Dep't*, 36 F.3d 53, 55-56 (8th Cir. 1994) (quoting *Monell*, 436 U.S. at 691), or, alternatively, liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a custom or usage with the force of law.  *Mettler*, 165 F.3d at 1204; *Thelma D. ex rel. Delores A. v. Bd. of Educ.*, 934 f.2d 929, 932 (8th Cir. 1991).  Liability for an unconstitutional custom or usage, however, cannot arise from a single act.  *Mettler*, 165 F.3d at 1205; *McGautha*, 36 F.2d at 57 (citing *Wedmeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir. 1991)).  Plaintiff's Complaint fails to identify any specific policy of the Minneapolis Police Department which would permit or allow improper police conduct.  At best, his Complaint can be read to argue that because Plaintiff contends that improper police practices occurred in the search and seizure here—a claim which itself fails as a matter of law—there must have been inadequate training by the Minneapolis Police Department.  Since Plaintiff has failed to identify an improper municipal policy, much less come forward with any evidence that the purported policy was the moving force behind any constitutional violation, Defendants' motion for summary judgment should also be granted as to this claim.

## IX.    REMAINING MISCELLANEOUS MOTIONS

Also before this Court are several miscellaneous non-dispositive motions, the resolution of which is unnecessary should the District Court order summary judgment in favor of Defendants.  If the District Court agrees with this Court's recommendation that summary judgment be granted, this Court recommends that the following motions be denied as moot: (1) Plaintiff's Motion for a Fourth Continuance (Doc. No. 69); (2) Plaintiff's Motion to Stay Pending Criminal Appeal (Doc. No. 63); and (3) Defendant's Motion to Compel Discovery (Doc. No. 35).

## X.    RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1.  Defendants' Motions for Summary Judgment (Doc. No. 41 and 48) be **GRANTED**;

2.  Plaintiff's Motion for a Fourth Continuance (Doc. No. 69) be **DENIED AS MOOT**;

3.  Plaintiff's Motion to Stay Pending Criminal Appeal (Doc. No. 63) be **DENIED AS MOOT**;

4.  Defendant's Motion to Compel Discover (Doc. No. 35) be **DENIED AS MOOT**; and

5.  This case be **DISMISSED** with prejudice.

Dated: December 9, 2008

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
December 23, 2008, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within ten days after service thereof.  All briefs filed under
this rule shall be limited to 3500 words.  A judge shall make a *de novo*
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.